UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALLEN MICHAEL GARREAU,<br><br>Defendant. | 3:21-CR-30050-RAL<br><br>MEMORANDUM OPINION AND ORDER |

What is the Due Process Protections Act (DPPA)[1] and does it apply when a criminal defendant is alleged to have violated pretrial release conditions? How about in other revocation proceedings (such as those seeking to revoke adult and juvenile supervision for violating conditions of a post-conviction/disposition judgment)—does the DPPA apply to these proceedings? Because no court appears to have addressed the scope of the DPPA and its applicability, this Court does so now.

BACKGROUND

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

---

[1] Pub. L. No. 116-182, 134 Stat. 894 (2020).

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[2] The *Brady* rule includes impeachment evidence as well as exculpatory evidence.[3] "There are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued."[4] The prosecution has a duty under the Due Process Clause to disclose such evidence even if the defendant makes no request for it.[5] And most courts have held that the prosecution must provide the defense with exculpatory or impeachment evidence, even if that evidence would be inadmissible at trial—as long as the evidence could have led to the discovery of admissible evidence.[6]

---

[2]373 U.S. 83, 87 (1963).

[3]*Giglio v. United States*, 405 U.S. 150, 154 (1972); *see also United States v. Bagley*, 473 U.S. 667, 675 (1985) (impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule because such evidence favors an accused so that, if disclosed and used effectively, it may make the difference between conviction and acquittal).

[4]*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

[5]*See, e.g., Turner v. United States,* 137 S. Ct. 1885, 1893 (2017).

See, *e.g.*, *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014) ("withheld information is material under *Brady* [] if it would have…led directly to admissible evidence," explaining why the inadmissible information would have led to admissible evidence in the case); *Johnson v. Folino,* 705 F.3d 117, 130 (3d Cir. 2013) ("[T]he admissibility of the evidence itself is not dispositive for *Brady* purposes. Rather, the inquiry is whether the undisclosed evidence is admissible itself or could have led to the discovery of admissible evidence…."); *United States v. Mahaffy,* 693 F.3d 113, 131 (2d Cir. (2012) (*Brady* violation for failure to disclose inadmissible hearsay because testimony could have led to discovery of admissible testimony); *United States v. Sipe*, 388 F.3d 471,

(continued. . .)

On October 21, 2020, the President signed into law the DPPA.[7] The statute amends Federal Rule of Criminal Procedure 5 by inserting a new provision—Rule 5(f) — that requires federal courts "in all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present," to "issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady* … and its progeny, and the possible consequences of violating such order under applicable law." The statute also instructs that each judicial council, in which a district court is located, formulate a model order implementing the prosecution's disclosure obligation.

The DPPA's scant legislative history reveals that Congress decided, because of "inadequate safeguards in Federal law," to require *Brady* "reminder" orders to ensure that prosecutors complied with their constitutionally mandated disclosure obligations.[8] Representative Sheila Lee Jackson, a House Sponsor, pointed to the 2008 trial of then-

---

485 (5th Cir. 2004) (evidence may be material for *Brady* purposes even if inadmissible) *Ellsworth v. Warden, N.H. State Prison*, 333 F.3d 1, 5 (1st Cir. 2003) *(en banc)* (a defendant can establish a viable *Brady* claim by showing that withheld evidence, though itself inadmissible, would have led to the discovery of material admissible evidence); *Bradley v. Nagle,* 212 F.3d 559, 567 (11th Cir. 2000) (inadmissible information must be disclosed if it "would have led the defense to some admissible material exculpatory evidence"); *but see Hoke v. Netherland*, 92 F.3d 1350, 1356 n.3 (4th Cir. 1996) (inadmissible evidence, as a matter of law, is "immaterial" for *Brady* purposes).

[7]Pub. L. No. 116-182, 116th Cong., 2d Sess. (codified at Fed. R. Crim. P. 5(f)).

[8]166 Cong. Rec. H4582 (Sept. 21, 2020).

Senator Ted Stevens as a "prominent example" of why such orders were needed.[9] After a jury found Senator Stevens guilty of seven counts of making false statements, the district court set aside the verdict due to post-trial revelations that the government had failed to disclose exculpatory evidence to the defense.[10] The court though could not impose contempt sanctions against prosecutors because it had never issued an enforceable order directing them to abide by their *Brady* obligations.[11] The DPPA seeks to prevent similar outcomes and safeguarding a criminal defendant's right to a fair trial.

## DISCUSSION

### A. Pretrial Release Revocations

The Court ordered Allen Michael Garreau, the criminal defendant in this possession with intent to distribute a controlled substance (methamphetamine) case, to appear after the probation office reported that he may have violated four conditions of his pretrial release.[12] Must the Court enter dual orders, under the DPPA and Rule 5(f), at Garreau's initial appearance on the revocation report? Or, put another way, is the revocation proceeding a "criminal" one within the meaning of Rule 5(f) that requires the *Brady* reminder and confirmation? The short answer to these questions is "no."

---

[9]*Id.* at H4583.

[10]*United States v. Stevens*, No. 08-cr-231(EGS), 2019 WL 6525926 at *1 (D. D.C. Apr. 7, 2009), 2008 WL 8743218 at *1 (D. D.C. Dec. 19, 2008).

[11]166 Cong. Rec. H4583.

[12]Docket Nos. 37, 38.

4

Revocations of adult pretrial releasees are governed by 18 U.S.C. § 3148, not Rule 5(f). The statute sets forth the procedure, and sanctions, for a person released under 18 U.S.C. § 3142 and violated a condition of release. § 3148, a specific statute found in the Bail Reform Act,[13] trumps Rule 5(f), a rule of general applicability, even if such revocations are, or may be considered, "criminal proceedings."

A separate set of laws exists for handling juveniles who are alleged to have committed crimes. The Federal Juvenile Delinquency Act[14] controls when a juvenile is charged with delinquency. One of its provisions explicitly addresses pretrial release matters.[15] Delinquency proceedings are not criminal because a juvenile is not "convicted" of a crime like an adult but determined to be a juvenile delinquent. In other words, an adjudication of juvenile delinquency results in a civil determination of status rather than a criminal conviction.[16]

Now an argument could be made that the civil status of a delinquency case should not be used to deprive a juvenile defendant of his/her due process rights. Even so, the issue is not a constitutional one but simply whether Rule 5(f)'s reminder mandate should be imposed in juvenile bond revocation proceedings. It should not.

---

[13] 18 U.S.C. § 3141, *et seq.*

[14] 18 U.S.C. § 5031, *et seq.*

[15] *18 U.S.C. § 5034.*

[16] *United States v. Gauld*, 865 F.3d 1030, 1032-34 (8th Cir. 2017).

And there is another reason why. The DPPA only amended Rule 5. Rule 1 categorically excludes juvenile delinquency proceedings from the federal criminal rules.[17] Rule 5(f) thus has no bearing on pretrial revocation proceedings in juvenile cases.

### B. Supervised Release and Probation Revocations

Courts that have addressed the issue appear to agree that the *Brady* rule does not apply to adult post-conviction revocation proceedings.[18]

By its terms, the DPPA did not create any new or additional rights beyond those already established in *Brady*. If the government has no *Brady* obligations in supervised release or probation revocation proceedings, then there is no corresponding need for a court to enter orders reminding the prosecution of its duty under *Brady* in such proceedings.

---

[17]Fed. R. Crim. P. 1(a)(5)(D).

See, *e.g.*, *United States v. Neal*, 512 F.3d 427, 434-38 (7th Cir. 2008) (supervised release); *United States v. Ataya*, 145 F. App'x 331, 333 n. 2 (11th Cir. 2005) (probation); *United States v. Nix*, 2:08-cr-00283-RCJ-6, 2017 WL 2960520 at *2 (D. Nev. July 11, 2017)(supervised release); *United States v. Jones*, No. 5:14-cr-74-DCR, 2017 WL 278478 at *1 (E.D. Ky. Jan. 20, 2017), *objections overruled*, 2017 WL 460811 (E.D. Ky. Feb. 2, 2017) (supervised release); *United States v. Gonzalez*, No. 13-cr-424-WJM, 2016 WL 8458986 at **2-4 (D. Colo. May 18, 2016)(supervised release); *State v. Hemmes*, 2007 ND 161, ¶¶ 5-9, 740 N.W. 2d 81, 83-85 (probation); *State v. Hill*, 368 S.C. 649, 654-59, 630 S.E. 2d 274, 277-80 (2006) (probation); *see also District Attorney's Off. for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (*Brady* is a "trial right," and because the respondent had "already been found guilty at a fair trial, … *Brady* is the wrong framework.").

Rule 5 exempts these revocation proceedings from its scope. The Rule directs that Rule 32.1 applies "[i]f a defendant is arrested for violating probation or supervised release."[19] When enacting the DPPA, Congress assuredly knew that Rule 32.1 governs the procedures in post-conviction revocations and could have amended the Rule but chose not to. Not doing so shows a desire, on the part of Congress, to confine the DPPA and Rule 5(f) to criminal cases and not extend them to after-judgment revocations.

### C. Juvenile Delinquent Supervision Revocations

In juvenile delinquency proceedings, a statute,[20] not the criminal rules,[21] regulates post-disposition revocations. The relevant statute has no provision like or similar to Rule 5(f) and does not incorporate either the DPPA or the Rule by reference.

### D. Probation Office

*Brady* applies to prosecutors in the "guilt phase" of criminal proceedings.[22] The probation office is not a prosecutor.[23] That office is part of the judiciary, a different branch of government, and "serves as an investigative and supervisory arm of the

---

[19]Fed. R. Crim. P. 5(a)(2)(B).

[20]*See* 18 U.S.C. §5037.

[21]*See* Fed. R. Crim. P. 1(a)(5)(D).

[22]*Gonzalez* 2016 WL 8458986 at *3.

[23]*Id.*

court."[24] Disclosure under *Brady*, therefore, "is not compelled … if the [evidence is] in the hands of … the probation office."[25] So if the probation office has most, if not all, of the alleged violation evidence in its possession—as is typically the case in revocation proceedings— then what practical reason is there for entering DPPA orders? There is none.

E. **"Countervailing Authority"**

Supposed violators generally cite three cases in support of the entry of *Brady* orders in revocations.[26] None of these cases, however, are authoritative or useful in discerning whether the DPPA and Rule 5(f) apply to proceedings held to revoke court-imposed conditions.

*United States v. Quiroz*,[27] an Eighth Circuit case, did not address the fundamental question of whether *Brady* applied, or whether a defendant had a general right to all exculpatory evidence in the context of a revocation proceeding.[28] At most, the appeals court's brief rejection of the *Brady* claim amounted to avoiding a question the court did

---

[24]*United States v. Davis,* 151 F.3d 1304, 1306 (10th Cir. 1998) (quoting *United States v. Burnette*, 980 F. Supp. 1429, 1433 (M.D. Ala. 1997)); *see also Gonzalez,* 2016 WL 8458986 at *3 (collecting cases).

[25]*United States v. Zavala*, 839 F.2d 523, 528 (9th Cir. 1998); *United States v. Sanchez*, No. CIV-17-122-SLP, 2018 WL 11240477 at *1 (W.D. Okla. May 17, 2018).

[26]*See Nix,* 2017 WL 2960520 at *2.

[27]374 F.3d 682 (8th Cir. 2004).

[28]*Neal,* 512 F.3d at 436-37.

not need to answer to decide the case.[29] *United States v. Dixon*,[30] a case in which the district court created a special procedure for disclosing exculpatory evidence in a Rule 32.1 proceedings, is an outlier and has not been followed elsewhere.[31] And *United States v. Ferrara*,[32] likewise has little, if any precedential value, because of its lack of meaningful analysis and citation to, much less discussion of, *Morrissey v. Brewer*[33] and that decision's offspring.[34]

## CONCLUSION

The DPPA and Rule 5(f) are limited to criminal proceedings and do not apply to ancillary revocations such as pretrial, supervised release, probation, or juvenile delinquent supervision. Revocations of this kind are not criminal, are governed by a particular statute or rule (that does not mention the DPPA and Rule 5(f)), and involve evidence held by the probation office, the disclosure of which is not imperative under *Brady*. This Court concludes that Congress did not intend to require the prosecution to be reminded of its *Brady* obligation in the context of revocation proceedings.

---

[29] *Gonzalez*, 2016 WL 8458986 at *2 & n.1.

[30] 187 F. Supp. 2d 601 (S.D. W.Va. 2002).

[31] *Gonzalez*, 2016 WL 8458986 at *3.

[32] No. 89-289-MLW, 2008 WL 2222033 (D. Mass., May 23, 2008).

[33] 408 U.S. 471 (1972).

[34] *Nix*, 2017 WL 2960520 at *2.

Accordingly, the Court will not issue Rule 5(f) reminder orders and admonishments in adult and juvenile revocations, whether pre- or post-judgment.

IT IS SO ORDERED

Dated this 3rd day of September, 2021 at Pierre, South Dakota.

BY THE COURT:

_____

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**
